# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| APB ASSOCIATES, INC., a Michigan corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09-CV14959-SFC-RSW |
| | ) | |
| BRONCO'S SALOON, INC., BRONCO'S ENTERTAINMENT, LTD., T&R ENTERPRISES, INC., RIVER ENTERTAINMENT LLC, and 31650 WEST EIGHT MILE, INC., | ) ) ) ) | Hon. Sean F. Cox |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO VACATE JUDGMENT AND TO RECONSIDER CLASS CERTIFICATION UNDER FED. R. CIV. P. 59(e), 60(b)(6), AND *AMERICAN COPPER & BRASS, INC. v. LAKE CITY INDUSTR. PRODS., INC.*

NOW COMES plaintiff, APB Associates, Inc. ("Plaintiff"), by and through its attorneys, and, pursuant to pursuant to Fed. R. Civ. P. 59(e), 60(b)(6), *American Copper & Brass, Inc. v. Lake City Industr. Prods., Inc.*, -- F.3d --, 2014 WL 3317736 (6th Cir. July 9, 2014) ("*American Copper*") and *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014), requesting that the Court (1) reconsider the Opinion & Order entered on August 20, 2014 (Doc. 94) granting Defendants' Rule 68 Offers of Judgment and Motion To Dismiss Case As Moot (Docs. 84 and 86), (2) vacate the Judgment (Doc. #95) entered on August 20, 2014, and (3) reconsider its Memorandum

Opinion denying Plaintiff's motion for class certification (Doc. #66) entered on April 26, 2013 and vacate its prior March 27, 2013 Order Denying Plaintiff's Motion For Class Certification. (Doc. #65).

In *American Copper*, the Sixth Circuit abrogated this Court's reasoning in this case. Accordingly, the Court should vacate its Judgment (Doc. 95) under Rules 59(e) and 60(b)(6). The purpose of Rule 59(e) is to allow for corrections while sparing the parties and appellate court of the unnecessary burden of a needless appellate proceeding. *American Copper* also represents "an intervening change in controlling law" under Rule 59(e). And the decision reveals "clear error of law" and an improper application of law that should be corrected to "prevent manifest injustice." Finally, under Rule 60(b)(6) *American Copper* represents a "reason justifying relief from the operation of a judgment," and the judgment should be vacated "as a means to achieve substantial justice." A "manifest injustice" will most certainly occur if the class in *American Copper* obtains certification along with a class-wide judgment, but the putative class in this case is denied class certification, not to mention an opportunity to obtain summary judgment. This is especially true where the defendants are subject to a strict liability standard and near certain liability for their wrongful acts under the TCPA.

Here, the Court's alternative basis for denial of class certification was its holding that hypothetical established business relationships (EBRs) between

Defendants and one or more class members defeated commonality and class certification even though the Court did not determine that Defendants' fax ads included an opt-out notice that complied with all of the TCPA's requirements. Thus, the Court should reconsider class certification.

The Court considered it possible that some class member(s) had an EBR with Defendants, presenting individual issues and preventing class certification. This was error for two reasons. First, such a relationship is irrelevant unless the faxes were sent with an opt-out notice conforming to federal requirements. *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014) ("The district court's failure to address the impact of an absent or inadequate opt-out notice is critical…"). In *Sandusky Wellness*, the Sixth Circuit recently vacated a district court's denial of class certification for that reason. Here, it is undisputed that the faxes in this case did not contain a TCPA-compliant opt-out notice, so the question of whether any class member fortuitously might have been a prior customer of Defendants before their junk faxes were sent to targets culled from the infoUSA database B2B purchased years earlier is irrelevant. Second, even if the notice were compliant, it is Defendants' burden to establish facts as opposed to speculation to support the existence of an EBR defense. Defendants did not meet their burden.

Moreover, under *American Copper*, a case with indistinguishable facts and

3

circumstances, the class meets all the requirements of Rules 23. Consequently, Plaintiff respectfully requests that the Court reconsider its prior order denying certification, certify a "successfully sent" class akin to that certified in *American Copper*, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.[1]

Pursuant to LR 7.1(a)(2)(A), Plaintiff conferenced with Defendants, both orally and in writing, explained the nature of this motion, and its legal basis, and was unable to secure concurrence in the relief sought. Defendants will oppose this motion.

---

[1] Assuming the Judgment is vacated, the Court is free to reconsider class certification. "An order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). "[C]ertifications are not frozen once made. Rule 23 empowers district courts to "alte[r] or amen[d]" class-certification orders based on circumstances developing as the case unfolds." *Amgen Inc. v. Connecticut Retirement Plans And Trust Funds*, 133 S.Ct. 1184, 1202 n.9 (U.S. 2013) (citing and quoting Fed.R.Civ.P. 23(c)(1)(C)); *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (stating that class certification orders are "inherently tentative"). District courts have a "continuing obligation to ensure that the class certification requirements are met, and [an] ability to alter or amend the certification order as circumstances change and the parties' litigation strategies evolve." *Randleman v. First National Title Insurance Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *See also Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011).

Dated: September 17, 2014       Respectfully submitted,


                                 s/ Phillip A. Bock
                                 One of Plaintiff's attorneys

| | |
|---|---|
| **JASON J. THOMPSON (P47184)** | **PHILLIP A. BOCK** |
| Sommers Schwartz, P.C. | Bock & Hatch, LLC |
| Attorney for Plaintiff | 134 N. La Salle, Suite 1000 |
| 2000 Town Center, Suite 900 | Attorney for Plaintiff |
| Southfield, MI 48075 | Chicago, IL 60602 |
| 248-355-0300 | 312-658-5500 |
| jthompson@sommerspc.com | phil@bockhatchllc.com |

**BRIAN J. WANCA**
Anderson + Wanca
Attorney for Plaintiff
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
847-368-1500
bwanca@andersonwanca.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| APB ASSOCIATES, INC., a Michigan corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09-CV14959-SFC-RSW |
| | ) | |
| BRONCO'S SALOON, INC., BRONCO'S ENTERTAINMENT, LTD., T&R ENTERPRISES, INC., RIVER ENTERTAINMENT LLC, and 31650 WEST EIGHT MILE, INC., | ) ) ) ) ) ) | Hon. Sean F. Cox |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF SUPPORTING ITS MOTION TO VACATE JUDGMENT AND TO RECONSIDER CLASS CERTIFICATION UNDER FED. R. CIV. P. 59(e), 60(b)(6), AND *AMERICAN COPPER & BRASS, INC. v. LAKE CITY INDUSTR. PRODS.*

**JASON J. THOMPSON (P47184)**
Sommers Schwartz, P.C.
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, MI 48075
248-355-0300
jthompson@sommerspc.com

**PHILLIP A. BOCK**
Bock & Hatch, LLC
134 N. La Salle, Suite 1000
Attorney for Plaintiff
Chicago, IL 60602
312-658-5500
phil@bockhatchllc.com

**BRIAN J. WANCA**
Anderson + Wanca
Attorney for Plaintiff
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
847-368-1500
bwanca@andersonwanca.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF THE ISSUES ........................................................... vii

CONTROLLING AUTHORITY ........................................................... viii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ........................................................................ 3

LEGAL STANDARD ............................................................................... 6

ARGUMENT ............................................................................................. 8

     I.     THE COURT SHOULD VACATE ITS JUDGMENT
          PURSUANT TO RULES 59(e) AND 60(b)(6). ................................. 8

     II.    RESPECTFULLY, THE COURT MISAPPLIED THE LAW
          IN PERMITTING THE POSSIBILITY THAT FAXES
          SERENDIPITOUSLY MIGHT HAVE BEEN SENT TO
          DEFENDANTS' PRIOR CUSTOMERS TO DEFEAT
          CLASS CERTIFICATION AND BY IGNORING THE
          OPT-OUT NOTICE REQUIREMENT. ........................................... 16

CONCLUSION ....................................................................................... 25

CERTIFICATE OF SERVICE ............................................................. 26

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A Aventura Chiropractic Center, Inc. v. Med Waste Mgmt. LLC*, 2013 WL
3463489 (S.D. Fla. July 3, 2013) ........................................................ 13

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 2013
WL 3654550 (W.D. Mich. July 12, 2013) ..................................... 11, 13

*APB Associates, Inc. v Bronco's Saloon, Inc.*, 297 F.R.D. 302 (E.D. Mich.
2013) ............................................................................................ passim

*Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities,
Inc.*, 737 F.3d 489 (7th Cir. 2014) ................................................ 11, 13

*Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F.Supp.2d 272 (S.D.N.Y.
2013) ........................................................................................... 18, 24

*CE Design v. Prism Business Media, Inc.*, No. 07 C 5838, 2009 WL
2496568 (N.D. Ill. Aug. 12, 2009), *affirmed by* 606 F.3d 443 (7th Cir.
2010), *cert denied.* 131 S.Ct. 933 (2011) ........................................ 19

*CE Design, Ltd. v. Prism Bus., Media, Inc.*, 606 F.3d 443 (7th Cir. 2010) .............. 4

*Chapman v. Wagener Equities, Inc.*, No. 09 C 7299, 2014 WL 540250
(N.D. Ill. Feb. 11, 2014) .................................................................. 13

*Charles v. Daley,* 799 F.2d 343 (7th Cir. 1986) .................................... 7

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D.
299 (D. N.J. 2013) .......................................................................... 13

*Cummings v. Connell,* 316 F.3d 886 (9th Cir.2003) ............................ 18

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ................. 6

*General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No.
957 v. Dayton Newspapers, Inc.,* 190 F.3d 434 (6th Cir.1999) .............. viii, 6

*Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417 (4th Cir. 2003) ........................ 17

*Hinman v. M and M Rental Center, Inc.,* 545 F.Supp.2d 802
   (N.D.Ill.2008) ................................................................................................. 18

*Holtzman v. Turza*, No. 08 C 2014, 2011 WL 3876943 (N.D. Ill. Aug. 29,
   2011)................................................................................................................ 11

*Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291 (6th Cir.1989) ......7, 15

*Howard v. United States,* 533 F.3d 472 (6th Cir. 2008) ......................................... 7

*Huff v. Metro. Life Ins. Co.,* 675 F.2d 119 (6th Cir. 1982) ..................................... 7

*In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014
   WL 2809283 (6th Cir., June 12, 2014) ..................................................... passim

*In re Visa Check/Master Money Antitrust Litig.,* 280 F.3d 124 (2d
   Cir.2001), *overruled on other grounds by In re Initial Pub. Offering
   Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006) ............................................................. 17

*In the Matter of GroupMe, Inc./Skype Communications S.A.R.L. Petition
   for Expedited Declaratory Ruling, Rules and Regulations Implementing
   the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-
   278, FCC-14-33, Declaratory Ruling, 2014 WL 1266074 (March 27,
   2014).................................................................................................................. 4

*Intera Corp. v. Henderson,* 428 F.3d 605 (6th Cir. 2005) ...................................... 7

*Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682 (7th Cir. 2013)........................ passim

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 648 (W.D. Wash. 2007)....................... 19

*Lampkin v. GGH, Inc.* 146 P.3d 847, 852 (Okla. Ct. App. 2006) .......................... 19

*Leisure Caviar, LLC v. United States Fish & Wildlife Serv.,* 616 F.3d 612
   (6th Cir. 2010) ............................................................................................ viii, 6

*Lewis v. Philip Morris*, Inc., 355 F.3d 515 (6th Cir. 2004).................................... 18

*Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir. 2011) ............................................. viii

iii

*Morse v. McWhorter,* 290 F.3d 795 (6th Cir.2002) .................................................. 7

*Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).............................................4, 18, 24

*Nolfi v. Ohio Kentucky Oil Corp.,* 675 F.3d 538 (6th Cir.2012)...................... viii, 7

*Olle v. Henry & Wright Corp.,* 910 F.2d 357 (6th Cir.1990)..................... viii, 7, 15

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012).................................................................................................... 12

*Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701 (6th Cir. 2009) ......................... 6

*Randleman v. First National Title Insurance Co.*, 646 F.3d 347 (6th Cir. 2011)....................................................................................................... viii

*Rules and Regulations Implementing the TCPA*, 21 FCC Rcd 3787 (2006 Report and Order) ................................................................................. 19

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 3667916 (N.D.Ohio July 22, 2014) ......................................... 23

*Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009)............................. 18

*Self v. BellSouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012)................................ 4

*Soc. Servs. Union, Local 535 v. County of Santa Clara,* 609 F.2d 944 (9th Cir. 1979) ....................................................................................................... 18

*Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 294621 (W.D.Ky. June 30, 2014)..13, 17, 18, 19

*St. Louis Heart Center, Inc. v. Vein Centers For Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ............................ 13

*St. Louis Heart Center, Inc., v. Forest Pharm., Inc.*, No. 4:12–CV–02224, 2013 WL 1076540 (E.D. Mo. Mar. 13, 2012) .................................................... 19

*Targin Sign v. Preferred Chiropractic*, 679 F. Supp. 2d 894 (N.D. Ill. 2010)..................................................................................................... 14

*The Heil Co. v. Evanston Insurance Company*, 690 F.3d 722 (6th Cir. 2012) ........................................................................................................ 7

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ........................... 6

*United States v. Burke*, 252 F.Appx 49 (6th Cir. 2007) ........................................ 18

*United States v. Storey*, No. 09-3848, 2011 WL 1833193 (6th Cir. May 16, 2011) ..................................................................................................... 18

*York v. Tate,* 858 F.2d 322 (6th Cir. 1988) ..................................................... viii, 7

**Statutes**

28 U.S.C. § 2342(1) ........................................................................................... 4

47 U.S .C. 227(b)(2)(E) .................................................................................... 23

47 U.S.C. § 227 ............................................................................................... viii

47 U.S.C. § 227(b)(1)(C) ................................................................................. 20

47 U.S.C. 227(b)(2)(D) ...................................................................... 20, 21, 24

**Other Authorities**

Ray Horak, *Rumpelstiltskin, LLP: The Dark Side of Fax* ..................................... 19

The Compact Edition of the Oxford English Dictionary (Oxford University Press, 1971) ...................................................................................... 22

**Rules**

Fed. R. Civ. P. 23(b)(3) ................................................................................... vii

Fed. R. Civ. P. 59(e) ................................................................................. passim

Fed. R. Civ. P. 60(b)(6) ............................................................................. passim

**Treatises**

5 *Moore's Federal Practice* § 23.25[4][b][ii] (2002) ........................................... 17

**Regulations**

47 C.F.R. § 64.1200 (a) (4) (iii) (A) ........................................................ 22

47 C.F.R. § 64.1200 (f) (3) ..................................................................... 22

FCC Rules and Regulations, 71 Fed.Reg. 25,967 (May 3, 2006) .......................... 19

## <u>STATEMENT OF THE ISSUES</u>

1.     Should the Court vacate the Judgment (Doc. 95) and reconsider its opinion and order (Doc. 94) granting Defendants' motion to dismiss, pursuant to Fed. R. Civ. Pro. 59(e), 60(b)(6) and *American Copper & Brass, Inc. v. Lake City Industr. Prods., Inc.*, -- F.3d --, 2014 WL 3317736 (6th Cir. July 9, 2014) ("*American Copper*")?

2.     Should the Court reconsider class certification, pursuant to *American Copper*, and certify a class according to Federal Rule of Civil Procedure 23(a) and 23(b)(3)?

3.     Did the Court erroneously apply the TCPA in determining that a hypothetical established business relationship ("EBR") between Defendants and some fax recipient in the Class is a valid affirmative defense even though Defendants did not carry their burden to demonstrate an EBR with any class member, especially where Defendants' fax advertisement lacked an opt-out notice compliant with the requirements of the TCPA and the FCC regulations?

## <u>CONTROLLING AUTHORITY</u>

- Federal Rule of Civil Procedure 23
- Federal Rule of Civil Procedure 59(e)
- Federal Rule of Civil Procedure 60(b)(6)
- Telephone Consumer Protection Act, 47 U.S.C. § 227
- *American Copper & Brass, Inc. v. Lake City Industr. Prods., Inc.*, -- F.3d --, 2014 WL 3317736 (6th Cir. July 9, 2014)
- *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014)
- *York v. Tate,* 858 F.2d 322, 326 (6th Cir. 1988)
- *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999)
- *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.,* 616 F.3d 612, 615 (6th Cir. 2010)
- *Nolfi v. Ohio Kentucky Oil Corp.,* 675 F.3d 538, 552 (6th Cir. 2012)
- *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990)
- *Amgen Inc. v. Connecticut Retirement Plans And Trust Funds*, 133 S.Ct. 1184, 1202 n.9 (U.S. 2013)
- *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)
- *Randleman v. First National Title Insurance Co.*, 646 F.3d 347, 352 (6th Cir. 2011)
- *Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011)

## INTRODUCTION

Pursuant to Fed. R. Civ. Pro. 59(e), 60(b)(6), the Court should vacate the Judgment (Doc. 94) entered after the Court granted Defendants' motions to dismiss. When it earlier denied class certification, the Court reasoned that the B2B computerized fax logs were insufficient to establish standing, and held a class defined as all persons to whom the defendants "successfully sent" their fax ads could not be certified because the class could include persons lacking standing. That decision was abrogated by *American Copper & Brass, Inc. v. Lake City Industr. Prods., Inc.*, -- F.3d --, 2014 WL 3317736 (6th Cir. July 9, 2014) ("*American Copper*"). The Court should vacate the Judgment (Doc. 94) under Rules 59(e) and 60(b)(6).

Rule 59(e) is designed to permit corrections and spare the parties and courts of the unnecessary burden of a needless appeal. The Sixth Circuit's *American Copper* decision represents "an intervening change in controlling law" under Rule 59(e). *American Copper* reveals "clear error of law" and an improper application of law that must be corrected to "prevent manifest injustice." *American Copper* also represents, under Rule 60(b)(6), a "reason justifying relief from the operation of a judgment" and the Judgment should be vacated "as a means to achieve substantial justice" as well. A "manifest injustice" would occur if the class in *American Copper* obtains certification along with a class-wide judgment, but the

1

class in this case is denied the ability to litigate the merits of the claims as a class, not to mention denied an opportunity to obtain summary judgment. This is especially true because Defendants are subject to a strict liability standard and near certain liability under the TCPA for their faxing campaign.

The Court's alternate basis for denying class certification was that some class member(s) might have had a prior Established Business Relationship (EBRs) with Defendants, and that such a relationship would present individual issues preventing class certification. This was error. First, such a relationship is irrelevant unless the faxes included an opt-out notice that satisfied the TCPA's requirements. *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014) (vacating denial of class certification because "The district court's failure to address the impact of an absent or inadequate opt-out notice is critical….") Here, Defendants' faxes did not contain such a TCPA-compliant opt-out notice, so the question of whether any class member fortuitously might have been a prior customer of Defendants is irrelevant. Second, even if the opt-out notice satisfied all the requirements, it is Defendants' burden to establish facts as opposed to speculation to support the existence of an EBR defense. Defendants did not meet their burden. If they had, such identified persons could be excluded from the class. Therefore, Plaintiff requests that the Court reconsider its prior order denying certification, certify a "successfully sent" defined class as in

2

*American Copper*, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

## STATEMENT OF FACTS

Defendants are three Michigan taverns and a gentleman's club in Michigan. *See* Exhibit A, App. 0003-4; Skinner Dep., 6-9. Defendants decided to market by fax, and hired a fax broadcaster named Business to Business Solutions ("B2B"). Caroline Abraham operated B2B from August 2005 until September 2007. Exhibit A, App. 0047; Abraham Dec., ¶ 2. Defendants' ad offered "SeXXXy servers" and a location named "Chix on Dix."

With its customer's help, B2B would design a form advertisement to send by fax. Exhibit A, App. 0050-52; *Id*., ¶¶ 6-7. The customer would specify the number of faxes to send, and the geographic location and types of businesses to target. *Id*. B2B compiled the target list using a database it had purchased InfoUSA. Exhibit A, *Id*., ¶¶ 6, 7. After receiving final approval, B2B would broadcast the ad by fax. *Id*. That procedure was followed in this case. *See* Exhibit A, App. 0057-83; B2B Docs. at B2B 1-2, 6-15, 24.

B2B did not contact anybody in its purchased InfoUSA database to obtain express permission or invitation to receive advertisements by fax. Exhibit A, App. 0051, 65; Abraham Dec., ¶¶ 6-7. Defendants admit that they did not seek or receive permission from any of the fax targets, and they are "not aware of any"

3

established business relationships with them. <u>Exhibit A</u>, App. 0087, 89, 156-159; Defendants' Interrogatory Responses, ¶¶ 6-7. Defendants did not even know the names of the targets to which B2B sent the faxes. Moreover, Defendants cannot simply rely on B2B.[2]

Through subpoenas, Plaintiff obtained B2B's computer files and they permit identification of the potential class members. *See* <u>Exhibit A</u>, App. 0048-49, 94-96, 105-129, 130-149; Biggerstaff Report. Robert Biggerstaff, Plaintiff's expert, reviewed B2B's fax transmission logs. <u>Exhibit A</u>, App. 0094-95; Biggerstaff Rept., ¶¶ 7.a, 9-12 and Ex. 1. *See also* <u>Exhibit A</u>, App. 0048-50; Abraham Dec, ¶¶ 4-5. The records show that Defendants' advertisement was faxed to 4,088 Michigan telephone numbers on February 27, 2006. <u>Exhibit A</u>, App. 0104-129, 130-154; Biggerstaff Rept., ¶¶ 13-14. The B2B records show conclusively which telephone numbers received the fax transmissions and when. <u>Exhibit A</u>, App. 0104-129.

Plaintiff's complaint requested certification of a class. Doc. 1, pp. 1, 3-8. On

---

[2] One cannot merely rely on the statements of another regarding alleged compliance regarding consent. A recent Declaratory Ruling of the Federal Communications Commission ("FCC") is dispositive, and Defendants loses this argument as a matter of law. *See In the Matter of GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, FCC-14-33, Declaratory Ruling, 2014 WL 1266074 (March 27, 2014). Federal district courts do not have jurisdiction to invalidate rules promulgated by the FCC interpreting the Communications Act which includes the TCPA. 28 U.S.C. § 2342(1); *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013); *Self v. BellSouth Mobility, Inc.*, 700 F.3d 453, 461-464 (11th Cir. 2012); *CE Design, Ltd. v. Prism Bus., Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010).

April 26, 2013, the Court denied Plaintiff's motion for class certification. Doc. 66; *APB Associates, Inc. v Bronco's Saloon, Inc.*, 297 F.R.D. 302 (E.D. Mich. 2013) Plaintiff filed a Rule 23(f) petition for leave to file an interlocutory appeal of the denial of class certification, but that petition was denied Oct. 23, 2013. *APB Associates, Inc. v Bronco's Saloon,* Case: 13-108, Document: 006111860588.

On April 10. 2012, Bronco's Saloon, Inc., Bronco's Entertainment, Ltd., 31650 West Eight Mile, Inc., and River Entertainment LLC served an Offer of Judgment under Rule 68 "to allow judgment to be taken against them, individually and jointly, in the amount of [$1,500]" along with "costs through the date of acceptance of this offer of judgment" and further "agree[d] to submit to an injunction prohibiting them from sending any unsolicited facsimile advertisements" violating the TCPA. Doc. 73, p. 3. On April 26, 2012 Defendant T&R Enterprises, Inc. served and filed an offer with identical terms. Doc. 35. Pp. 1-2. Plaintiff did not accept either offer. On August 2, 2014, the Court entered Judgment under Rule 68 (Doc. 95) and entered an opinion and order explaining the ruling. Doc. 94. The judgment awarded Plaintiff $1,500 in money damages, but not costs or expenses. Doc. 95.

The retainer agreement between Plaintiff's counsel and Compressor states, "Attorneys will advance the costs and expenses of litigation, repayable only from recovery. Client assigns to Attorneys all rights conferred by applicable statutes and

rules to recover attorneys fees and/or costs from the Defendant. … Client will <u>not</u> have to pay attorneys' fees or expenses, except as stated herein." *See* Retainer Agreement – Class Action (previously filed under seal on June 18, 2014 with the Court). Doc. 92. Class Counsel have expended no less than $38,017.60 in litigation expenses on behalf of Plaintiff and the putative class that could only be recouped from a class-wide recovery. <u>Exhibit B</u>.[3]

## **LEGAL STANDARD**

"Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice." *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999); *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.,* 616 F.3d 612, 615 (6th Cir. 2010). The purpose of Rule 59(e) is "to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate

---

[3] Most litigation expenses are not recoverable as costs. In this case, Plaintiff has a stake in spreading litigation expenses to the rest of the class because Plaintiff's counsel's expenses otherwise would consume the entire $1,500 judgment from Defendant's offer even after taxable costs are collected from Defendants. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701 (6th Cir. 2009). *See also* http://www.mied.uscourts.gov/Rules/BillofCosts200711.pdf.

proceedings."[4] A court abuses its discretion when it "relies on clearly erroneous findings of fact or when it improperly applies the law." *Nolfi v. Ohio Kentucky Oil Corp.,* 675 F.3d 538, 552 (6th Cir. 2012). The Sixth Circuit reviews *de novo* "when the lower court rejects an application under Rule 59(e) based upon an erroneous legal doctrine." *See Huff v. Metro. Life Ins. Co.,* 675 F.2d 119, 122 n. 5 (6th Cir. 1982). Rule 60(b)(6) also authorizes a court to grant relief from a final judgment for "any other reason justifying relief from the operation of a judgment." *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990). Courts "must apply subsection (b)(6) only 'as a means to achieve substantial justice'" *Id.* (citing *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989)).

After the Judgment is vacated the Court is free to reconsider class certification. "An order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). "[C]ertifications are not frozen once made. Rule 23 empowers district courts to "alte[r] or amen[d]" class-certification orders based on circumstances developing as the case unfolds."

---

[4] *York v. Tate,* 858 F.2d 322, 326 (6th Cir. 1988); *Charles v. Daley,* 799 F.2d 343, 348 (7th Cir. 1986)); *Howard v. United States,* 533 F.3d 472, 475 (6th Cir. 2008). The Sixth Circuit reviews the denial of a Rule 59(e) motion for abuse of discretion, which occurs when a district court relies on clearly erroneous findings of fact or when it improperly applies the law. *Intera Corp. v. Henderson,* 428 F.3d 605, 619–20 (6th Cir. 2005); *Morse v. McWhorter,* 290 F.3d 795, 799 (6th Cir.2002); *The Heil Co. v. Evanston Insurance Company*, 690 F.3d 722, 728 (6th Cir. 2012) ("The district court therefore abused its discretion by concluding that the punitive damages award could be attributed to Heil's breach of contract claim.").

7

*Amgen Inc. v. Connecticut Retirement Plans And Trust Funds*, 133 S.Ct. 1184, 1202 n.9 (U.S. 2013) (citing and quoting Fed.R.Civ.P. 23(c)(1)(C)); *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (stating that class certification orders are "inherently tentative"). District courts have a "continuing obligation to ensure that the class certification requirements are met, and [an] ability to alter or amend the certification order as circumstances change and the parties' litigation strategies evolve." *Randleman v. First National Title Insurance Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *See also Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011).

## **ARGUMENT**

### I.   **THE COURT SHOULD VACATE ITS JUDGMENT PURSUANT TO RULES 59(e) AND 60(b)(6).**

In this and two other TCPA cases involving B2B fax records, the Court denied class certification by holding that any class would lack ascertainability. *See APB Associates, Inc. v Bronco's Saloon, Inc.*, 297 F.R.D. 302 (E.D. Mich. 2013) ("*APB*"); *Compressor Engineering Corp. v. Manufacturers Financial Corp.*, 292 F.R.D. 433 (E.D. Mich. 2013) ("*Compressor*"); *Machesney v. Lar-Bev of Howell*, 292 F.R.D. 412 (E.D. Mich. 2013) ("*Machesney*"). The Court ruled, "One major impediment to class certification in this case, as it is in the other two cases pending before this Court, is ascertainability of the proposed class." *APB*, 297 F.R.D at 315; *Compressor*, 292 F.R.D. at 446; *Machesney*, 292 F.R.D. at 425. "[I]n order to

8

have an ascertainable class, you need to be able to determine who is in the class."
*APB*, 297 F.R.D at 315; *Compressor*, 292 F.R.D. at 447; *Machesney*, 292 F.R.D. at
426. Plaintiff proposed a class defined as all persons to whom Defendants fax was
successfully sent and indicated that B2B's records contained names and addresses
that correspond to the subject fax numbers. The Court disagreed, holding that
Plaintiff would need to determine fax machine "ownership" at the time of the
faxing, which would require "individualized determination[s] in order to ascertain
the members of the class." 297 F.R.D at 319-20; *Compressor*, 292 F.R.D. at 450-
51; *Machesney*, 292 F.R.D. at 429-31. The Court denied class certification. *APB*,
297 F.R.D at 323; *Compressor*, 292 F.R.D. at 454; *Machesney*, 292 F.R.D. at 431.

The parties and the Court recognized that, at the time of the prior class
certification decisions, that "there [was] no Sixth Circuit authority addressing the
standing issue," class definitions, and ascertainability. *E.g.*, *Machesney*, at 427,
429-30. But the Sixth Circuit recently abrogated this Court's reasoning about class
ascertainability, standing, and class definitions, explaining as follows:

> We are unpersuaded by *Machesney's* analysis of the TCPA. For
> starters, the *Machesney* court had no reason to consider the legislative
> history of the TCPA at all. The plain language of the statute prohibits
> the "use [of] any telephone facsimile machine, computer, or other
> device to send, to a telephone facsimile machine, an unsolicited
> advertisement." 47 U.S.C. § 227(b)(1)(C). Because the language of
> the TCPA is clear, the district court in Machesney should not have
> waded into the legislative history. *See Roberts v. Hamer*, 655 F.3d
> 578, 583 (6th Cir. 2011) ("If the words are plain, they give meaning to
> the act, and it is neither the duty nor the privilege of the courts to enter

speculative fields in search of a different meaning.") (internal quotation marks omitted). Recovery under the TCPA's private-right-of-action provision, moreover, is not premised on the ownership of a fax machine. See 47 U.S.C. § 227(b)(3); see also *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (holding that ownership of a fax machine is not a prerequisite for standing under the TCPA).

…

Lake City also questions the meaning of the phrase "successfully sent," a phrase that appears in the class definition. In Lake City's view, a fax might be "successfully sent" without being received by its intended recipient. But the evidence introduced by American Copper at the class-certification stage—which Lake City did not rebut—offers no support for this purported distinction. Biggerstaff, American Copper's expert witness, analyzed B2B's fax records in his report. Based on those records, Biggerstaff opined that "a total of 10,627 successful transmissions of a complete fax were successfully sent to and received by 10,627 unique fax numbers."

Although Lake City argues that some entries in B2B's records might be erroneous, this argument is wholly speculative because Biggerstaff examined B2B's records and counted only "error-free transmissions." *Accord Ira Holtzman*, 728 F.3d at 685 (noting that the defendant had "not offered any reason to think that [the defendant's] fax machines recorded the codes inaccurately or that its software maintained the log incorrectly"). Lake City's attack on the "successfully sent" language in the class definition is therefore without merit.

We now turn to Lake City's argument that the class is not objectively ascertainable. Lake City failed to make this argument in its opposition to class certification or in its response to American Copper's motion for summary judgment, so the argument has been forfeited. *See Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) ("In general, issues not presented to the district court but raised for the first time on appeal are not properly before the court.") (internal quotation marks and alteration omitted).

We find no reason to excuse the forfeiture in the present case, especially because the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.

> *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (determining class membership "by reference to objective criteria"); *d*, 534 F.3d 508, 513 (6th Cir. 2008) (commenting that notice to class members need not be perfect, but simply "the best notice that is practicable under the circumstances").

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc*., No. 13-2605, --- F.3d ---, 2014 WL 3317736, **3-5 (6th Cir. July 9, 2014).[5] *See also Arnold Chapman v. Wagener Equities, Inc.*, 747 F.3d 489 (7th Cir. 2014) (Posner, J.) (referring to the *Compressor* decision as "erroneous on its own terms"). The Sixth Circuit affirmed the *American Copper* court's decision to certify the class and its subsequent grant of summary judgment in favor of the class in a B2B case identical to the present case. *American Copper*, 2013 WL 3654550, *4 (following the Seventh Circuit's decision in *Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013)).[6]

---

[5] In *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc*., 2013 WL 3654550 (W.D. Mich. July 12, 2013), after previously certifying a class, Judge Quist awarded class-wide summary judgment to a class of recipients from one of B2B's advertising customers where, as here, the defendants speculated about possible, not actual or demonstrated, false positives in the fax logs. Speculation about possible failures does not refute authenticated, admissible fax transmission records proving successful transmissions or receipt. "[T]here is strong evidence that the fax transmission logs are accurate, and any unsuccessful transmission attempts have already been removed. [citing Biggerstaff Report] . . . The evidence shows that the broadcast fax was "sent" to over 10,000 fax numbers, and there is no evidence to support those faxes were not "sent" for TCPA purposes." *Id.* *4.

[6] The trial court also rejected the *Holtzman* defendant's use of its expert's speculation. *Holtzman v. Turza*, No. 08 C 2014, 2011 WL 3876943, * 3 (N.D. Ill. Aug. 29, 2011) ("Thus, because defendant has failed to offer evidence suggesting that the faxes were not received — for example, evidence that MessageVision's

In this case, the Court reasoned that the B2B fax logs (and Biggerstaff's analysis and expert opinions regarding them) were insufficient to demonstrate standing for the persons to whom B2B successfully sent Defendants' fax ads. *APB*, 297 F.R.D at 319-20; *Machesney*, 292 F.R.D. at 429; *Compressor*, 292 F.R.D. at 450-51. The Court held that a class defined as all persons to whom the defendants fax ads were "successfully sent" could not be certified because it would include persons who lacked standing. *Id. American Copper* rejected this reasoning, noting that the TCPA was intended to prevent "'telephone lines from being tied up' by unsolicited fax advertisements.'" 2014 WL 3317736 at *4 (quoting *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 821 (8th Cir. 2012)). The victim of a junk fax transmission need not print the fax ad or own the fax machine to have standing. *Id.*, 2014 WL 3317736 *4 (citing *Holtzman C.P.A., Inc. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)).

*American Copper's* facts are indistinguishable from this case. *American Copper* was also a junk faxing class action involving defendants that hired B2B to blast fax their advertisement to a list B2B compiled from an infoUSA database it purchased years earlier. In *Compressor, Machesney,* and *APB*, the plaintiffs all relied on B2B's fax logs and their expert Biggerstaff's analyses of those logs to sue

---

fax delivery system ever reported a false positive or was otherwise unreliable — defendant has failed to establish a disputed issue of material fact on whether the class members received the faxes").

the defendants for violating the TCPA for all of the faxes B2B's business records showed were "successfully sent." The district court in *American Copper* rejected the arguments advanced by the *Compressor, Machesney,* and *APB* defendants in these cases, certified the class, and entered summary judgment for the certified class. On appeal the Sixth Circuit affirmed in all respects.

The Seventh Circuit also rejected this Court's narrow view of standing under the TCPA. *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 737 F.3d 489, 491-492 (7th Cir. 2014) (Posner, J.). The Seventh Circuit explained:

> Nor does entitlement to statutory damages require any showing of injury of any sort, for such damages not only serve to compensate for injuries difficult to estimate in dollar terms, but also, like statutory compensation for whistleblowers, operate as bounties, increasing the incentives for private enforcement of law. Anyway it would be arbitrary to limit relief under the junk-fax provision of the Telephone Consumer Protect Act to owners of fax machines, and there is no suggestion of such a limitation in the statute. [*Id.*[7]]

---

[7] The Sixth and Seventh Circuit's opinions in *American Copper* and *Wagener*, respectively, are consistent with numerous district court decisions with the exception of the Court's opinions in *Machesney, Compressor and APB*. *See e.g. City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D. 299, 309 (D. N.J. 2013); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 294621, *3 (W.D.Ky. June 30, 2014); *St. Louis Heart Center, Inc. v. Vein Centers For Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 WL 6498245, *5 (E.D. Mo. Dec. 11, 2013) (Perry, J.); *A Aventura Chiropractic Center, Inc. v. Med Waste Mgmt. LLC*, 2013 WL 3463489, at *5 (S.D. Fla. July 3, 2013); *Chapman v. Wagener Equities, Inc.*, No. 09 C 7299, 2014 WL 540250, *8 (N.D. Ill. Feb. 11, 2014) (Tharpe, J.). Another judge has similarly

13

As the Sixth Circuit did in *American Copper*, the Seventh Circuit has affirmed summary judgment in favor of a TCPA class based solely on the fax logs of the defendant's fax broadcaster. In *Holtzman*, 728 F.3d at 684-685 (7th Cir. 2013), the Seventh Circuit stated that the T.30 protocol made the fax broadcaster's record of a successful transmission sufficient to prove the fax was received. *Id.*

In the present case, Biggerstaff confirmed that only those B2B transmissions that completed all five phases of the T.30 protocol were logged as successful. Biggerstaff Report, Exhibit A, App. 0094-99. Biggerstaff's report shows that Plaintiff received a successful error-free fax transmission to its fax machine at 248-354-6645 on February 27, 2006. See Exhibit A, App. 107, 111; Biggerstaff Report, Ex. 3, p. 120, line 5630; and Ex. 4, p. 1, line 201. Those records also show that Defendants' advertisement was faxed successfully 4,088 times to 4,088 different Michigan telephone numbers on February 27, 2006. Exhibit A, App. 0094-95, 105-149; Doc. 34, pp. 15-16; Biggerstaff Report, Exhibits 3-4; App. 0165-186; Doc. 64-1, pp. 1-87, Declaration of Robert Biggerstaff (3/18/2013). There is no contrary evidence showing the faxes were not successfully sent.

Like the present case, *American Copper* arose from faxes faxed by B2B and the plaintiff used Biggerstaff's testimony to prove the faxes were successfully sent. Although the Court here rejected this as evidence of standing, *American Copper*—

called any lack of identification argument to be "fallacious" in a similar B2B case. *Targin Sign v. Preferred Chiropractic*, 679 F. Supp. 2d 894, 898 (N.D. Ill. 2010).

14

a published decision of a panel of the Sixth Circuit—held that Biggerstaff's analysis of the B2B fax logs alone was sufficient to establish standing for a class of persons to whom B2B successfully sent the defendant's fax. 2014 WL 3317736 at *4. Thus, the Court's refusal to accept the sufficiency of Biggerstaff's analysis of the B2B logs to establish standing was erroneous and the Court should reconsider its prior class certification denial ruling and certify a class.

*American Copper* certainly represents "an intervening change in controlling law" in the Sixth Circuit. Rule 59(e). It shows that the Court erred by determining that the class is not ascertainable in this case. Thus, the Court should vacate the Judgment (Doc. 95) to "correct a clear error of law or prevent manifest injustice." Rule 59(e). *American Copper* is a "reason justifying relief from the operation of a judgment" such that the Court should vacate the Judgment (Doc. 95) "as a means to achieve substantial justice." Rule 60(b)(6); *Olle*, 910 F.2d at 365; *Hopper*, 867 F.2d at 294.

If the Court doesn't vacate the judgment a manifest injustice will be worked upon the class in this case. As the Court previously ruled:

> "[t]he TCPA is essentially a strict liability statute" which imposes liability upon senders of unsolicited faxes. *Alea London Ltd. v. American Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir.2011). That is, the statute does not require any intent on the part of the sender for liability, except when awarding treble damages. *Id.* And the relevant FCC regulations define a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."

15

> 47 C.F.R. § 64.1200(a)(10). In addition the FCC has concluded that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 F.C.C.R. 12391, 12407 (1995). Thus, a defendant "cannot escape liability simply by hiring an independent contractor to transmit unsolicited facsimiles on their behalf." [cite omitted]

*APB*, 297 F.R.D. at 305; *Machesney*, 292 F.R.D. at 415; *Compressor*, 292 F.R.D. at 436. The classes in *Machesney, Compressor* and *APB* are situated identically to the class in *American Copper*. It will be a "manifest injustice" if the class in *American Copper* obtains certification along with a class-wide judgment, but the classes in *Machesney, Compressor,* and *APB* are denied the ability to litigate the merits of these uniform claims as a class, especially because the defendants are subject to a strict liability standard and near certain liability for their wrongful acts under the TCPA. Thus, the Court should reconsider class certification, and certify the class defined akin to the *American Copper* class.

## II.   RESPECTFULLY, THE COURT MISAPPLIED THE LAW IN PERMITTING THE POSSIBILITY THAT FAXES SERENDIPITOUSLY MIGHT HAVE BEEN SENT TO DEFENDANTS' PRIOR CUSTOMERS TO DEFEAT CLASS CERTIFICATION AND BY IGNORING THE OPT-OUT NOTICE REQUIREMENT.

The Court's alternate basis for denying class certification was the possibility that some class member(s) might have had a prior Established Business Relationships ("EBR") with Defendants, presenting individualized issues. This was

16

error for two reasons. First, such a relationship is irrelevant unless the faxes were sent with an opt-out notice that complied with all of the federal requirements. *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014) ("The district court's failure to address the impact of an absent or inadequate opt-out notice is critical…."). In *Sandusky*, the Sixth Circuit vacated a district court's denial of class certification for this same reason. Here, it is undisputed that the faxes in this case did not contain such a TCPA compliant notice, so the question of whether any class member might have fortuitously been a past customer of Defendants is legally irrelevant. "[A] plain reading of the statute provides that an [EBR] aloe is not enough to preclude liability—among other requirements is a compliant opt-out notice." *Spine and Sports*, 2014 WL 294621, *18, n. 18 ("Because the opt-out notice is not compliant, whether an established business relationship existed between some potential class members and Zirmed is irrelevant.").

Second, numerous Circuits have held that hypothetical or speculative problems cannot be used to deny class certification as was the case here. *See In re Visa Check/Master Money Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir.2001), *overruled on other grounds by In re Initial Pub. Offering Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006); *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 430 (4th Cir. 2003), *citing 5 Moore's Federal Practice* § 23.25[4][b][ii] (2002)); *Soc. Servs.*

17

*Union, Local 535 v. County of Santa Clara,* 609 F.2d 944, 948 (9th Cir. 1979);

*Cummings v. Connell,* 316 F.3d 886, 896 (9th Cir.2003). There is no factual or

logical reason, and certainly no record evidence, to believe that any of the

businesses that were successfully sent Defendants' faxes had an established

business relationship with "Chix on Dix" offering "SeXXXy Servers." Rather,

there is only speculation.

Third, even if the notice was compliant, it is Defendants' burden to establish

facts as opposed to speculation to support the EBR defense.[8] *Spine and Sports*,

2014 WL 294621, *18, n. 18 ("ZirMed has produced no evidence to meet this

burden….").[9] A defendant bears the burden of showing an EBR. The plaintiff is

---

[8] "Without facts or evidence …there is only speculation." *U.S. v. Storey*, No. 09-3848, 2011 WL 1833193, *4 (6th Cir. May 16, 2011). "Mere speculation is insufficient to create a preponderance of the evidence." *U.S. v. Burke*, 252 F.Appx 49, 54 (6th Cir. 2007). Evidence must be based on "more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris*, Inc., 355 F.3d 515, 533 (6th Cir. 2004).

[9] Express consent is consent that is clearly and unmistakably stated. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009). Moreover, "Other courts, including two Courts of Appeals, have found that even advertisements sent with consent/permission must include an opt-out notice that complies with the applicable requirements." *Spine and Sports*, 2014 WL 294621, *18. Accordingly, whether potential class members provided permission/consent for advertisements from ZirMed is irrelevant if the fax ad does not contain a compliant opt-out notice. *Id.* (citing *Nack v. Walburg,* 715 F.3d 680, 685 (8th Cir.2013); *Ira Holtzman, C.P.A. & Assocs. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013); *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F.Supp.2d 272, 286–87 (S.D.N.Y. 2013)); *see also Hinman v. M and M Rental Center, Inc.,* 545 F.Supp.2d 802, 807 (N.D.Ill. 2008) (stating "[t]he possibility that some of the individuals on the list may have separately consented to the transmissions at issue is an insufficient basis for

not required to prove its absence.[10] Defendants did not meet their burden.[11]

The TCPA permits an affirmative defense of EBR if all three of the following conditions are met: (1) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (2) the sender obtained the number of the telephone facsimile machine either through the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to

denying certification")). Moreover, the burden regarding proof of consent is on Defendants. *Spine and Sports*, 2014 WL 294621, *19 n. 22. There is no evidence in this record to support consent given by any class member.

[10] Defendants' own expert published an article warning against advertising by fax: "Avoid faxing anything at all to any company or person with whom you do not have a provable existing established business relationship (EBR) or permission to fax. (I really mean rock solid, ironclad provable, for you may be forced to prove it in a court of law.) … [and] DO NOT engage in fax broadcasting unless you are absolutely certain that you are doing so within the law." *See* Ray Horak, *Rumplestiltskin, LLP: The Dark Side of Fax*. http://www.telecomreseller.com/2011/04/08/rumplestiltskin-llp-the-dark-side-of-fax/. Defendants did not produce any evidence of EBR or Consent with their taverns or strip clubs (See Docs. 58 and 59), much less "rock solid, ironclad" proof.

[11] *See CE Design v. Prism Business Media, Inc.*, No. 07 C 5838, 2009 WL 2496568, *15 (N.D. Ill. Aug. 12, 2009), *affirmed by* 606 F.3d 443 (7th Cir. 2010), *cert denied.* 131 S.Ct. 933 (2011), *quoting* FCC Rules and Regulations, 71 Fed.Reg. 25,967 (May 3, 2006). "Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient." *Rules and Regulations Implementing the TCPA*, 21 FCC Rcd 3787 at ¶12 (2006 Report and Order); *St. Louis Heart Center, Inc., v. Forest Pharm., Inc.*, No. 4:12–CV–02224, 2013 WL 1076540, n.2 (E.D. Mo. Mar. 13, 2012) (same); *Lampkin v. GGH, Inc.* 146 P.3d 847, 852, 854-55 (Okla. Ct. App. 2006); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 648 (W.D. Wash. 2007) (same).

make available its facsimile number for public distribution; **and** (3) the unsolicited

advertisement contains an opt-out notice that meets statutory requirements. 47

U.S.C. § 227(b)(1)(C) (emphasis added). Even assuming an EBR existed between

Defendants and some class member, that relationship is irrelevant if the opt-out

notice does not satisfy 47 U.S.C. 227(b)(2)(D). A fax advertisement sent to an

EBR recipient still violates the TCPA if the opt-out notice is noncompliant.

47 U.S.C. 227(b)(2)(D) states the requirements for an opt-out notice:

(2) Regulations; exemptions and other provisions The Commission
shall prescribe regulations to implement the requirements of this
subsection. In implementing the requirements of this subsection, the
Commission—
....
(D) shall provide that a notice contained in an unsolicited
advertisement complies with the requirements under this
subparagraph only if—

(i) the notice is clear and conspicuous and on the first page of the
unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the
sender of the unsolicited advertisement not to send any future
unsolicited advertisements to a telephone facsimile machine or
machines and that failure to comply, within the shortest reasonable
time, as determined by the Commission, with such a request meeting
the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under
subparagraph (E);

(iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual to make such a request at any time or any day of the week; **and**

(vi) the notice complies with the requirements of subsection (d) of this section.

47 U.S.C. 227(b)(2)(D).  Defendants' opt-out notice attempt was as follows:

**Please Contribute to Reputable American Charities Dedicated to Helping Hurricane Victims**

This is a charitable message. We will send faxes only to parties who wish to receive them. If you, or someone acting in your behalf, did not request or allow us, our agents, our customers or our sponsors to send faxes to this number, this message was sent in error, and we apologize. To STOP charitable or other faxes, call the "Remove" Hotline (below). To continue to receive, do NOT call the Remove Hotline. This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294564, which is solely responsible for its contents and destinations. Date and time stamp are at the top of this page.

**"Remove" Hotline (800) 991-9484, ext 399, or (718) 360-0971, Ext 233.**
**Complaint Hotline (718) 360-1330, ext 232**

21

Exhibit A, App. 0103.

In violation of paragraph (i), Defendants' opt-out notice was not "clear and conspicuous." *See* § 64.1200 (a) (4) (iii) (A). The FCC has defined "the term clear and conspicuous" as "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." See 47 C.F.R. § 64.1200 (f) (3). The Compact Edition of the Oxford English Dictionary (Oxford University Press, 1971), p. 99, defines the word "apparent" as: "1. Meeting the eyes, showing itself; open to sight, visible, plainly seen" … "2. Conspicuous, prominent." … "3. Manifest to the understanding; evident, plain, clear, obvious; palpable."

Defendants' notice is neither "apparent to the reasonable consumer" nor "manifest to the understanding" "obvious or palpable." Rather, it attempts to deceive the reader and contains apparent falsehoods. For example, "We only send faxes to parties who wish to receive them" suggesting that the fax may have been "sent" "in error" and that "This message is the exclusive property" of the Romanian "Macaw" "which is solely responsible for its contents and destinations." Exhibit A, App. 0103. The notice was designed to deceive or distract readers. *Id.* ("This is a charitable message").

Moreover, in violation of paragraph (ii), the notice does not state that the recipient may make a request to stop future unsolicited advertisements and that

22

"failure to comply, within the shortest reasonable time ... with such a request is unlawful." In violation of paragraph (iii), the notice does not set forth the requirements for a request to stop future unsolicited advertisements under 47 U.S.C. 227(b)(2)(E). In violation of paragraph (iv), the notice does not include both "a domestic contact telephone <u>and</u> facsimile machine number for the recipient to transmit such a request to the sender." (emphasis added).

The use of the word "and" in paragraph (v) connotes that each paragraph, (i)-(vi), must be satisfied for a notice to be compliant. It is clear that, at the very least, the opt-out notice on the Defendants' fax fails to satisfy several of these paragraphs. The opt-out notice issue is common to all recipients. Because the faxes did not contain the statutorily required notice, any defense based on EBR (or consent) fails as a matter of law. Thus, speculation that some fax recipient might have been a customer of Defendants is legally insufficient to defeat certification.[12]

In *Paldo Sign and Display Co. v. Wagener Equities, Inc.,* 09 C 07299, 2014 WL 4376216 (N.D. Ill. Sep. 4, 2014), a district court recently granted partial summary judgment on behalf of a class of plaintiffs in a B2B case involving a

---

[12] In light of the Sixth Circuit's *American Copper* and *Sandusky Wellness* decisions, other trial courts are reconsidering denials of TCPA classes. In *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 3667916, *6 (N.D.Ohio July 22, 2014), Judge Katz recently ordered that the parties "to brief the issues of whether the opt-out notice … received from the Defendants violates the TCPA." If this Court determines that the current record is insufficient on this issue, Plaintiff requests that further briefing be allowed.

nearly identical opt-out notice as that in the instant case:

> [E]ven if the defendants had presented evidence sufficient to raise a
> fact issue as to whether any class members consented to the WEI fax,
> or had an existing business relationship with WEI, such that sending
> the fax to them would have been permissible, summary judgment on
> this issue would still be warranted because the statute requires that an
> unsolicited advertisement clearly and conspicuously notify a recipient
> that it may opt out of receiving any future unsolicited advertisements
> from the sender and that the sender's failure to comply, within 30
> days, is unlawful. 42 U.S.C. § 227(b)(2)(D)(i)–(v); 47 C.F.R. §
> 64.1200(a)(4). In addition, the "opt-out notice" must contain a
> domestic phone number *and* fax machine number for the recipient to
> transmit its re- quest. *Id.* at (iv). WEI's fax stated only that if the
> recipient "received this fax in error and would like to be removed
> from our database, call toll free 1–800–369–5723." Dkt. 190–1 at 1. It
> failed to advise that removal was required within 30 days and failed to
> provide an alternative fax number. Perhaps more significantly, it did
> not clearly advise the recipient that it had the right not to receive such
> un- solicited faxes, using instead a more ambiguous phrase, "if you
> received this fax in error." Whether the fax was sent or received in
> error is not the point of the required notice; the point is to advise the
> recipient that it has a legal right not to receive further unsolicited
> faxes from the sender. WEI's opt out notice failed to do this and was
> therefore not in compliance with Section 227. The plaintiffs are
> therefore entitled to summary judgment as to whether the recipients
> consented to receive the fax." [2014 WL 4376216, *7].

The Sixth Circuit's Rule 23(f) petition for leave to appeal denial was before

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013)

("Because Top of Mind omitted opt-out notices, it does not matter which recipients

consented or had an established business relation with Turza."). *See also Nack v.*

*Walburg*, 715 F.3d 680, 684 (8th Cir. 2013); *Bais Yaakov of Spring Valley v. Alloy,*

*Inc.,* 936 F.Supp.2d 272, 288 (S.D.N.Y. 2013). Recently citing *Turza*, the Sixth

Circuit vacated an order denying class certification in a TCPA case that involved deficient opt-out notices. *In re Sandusky Wellness Center, LLC*, No. 14-0301, ---Fed.Appx.---, 2014 WL 2809283 (6th Cir., June 12, 2014). "The district court, however, failed to consider whether the facsimiles transmitted by the defendants contained opt-out notices or whether those opt-out notices were adequate. If the notices were absent or inadequate, commonality might be present." *Id*. at *1.

## CONCLUSION

For the reasons stated above, the Court should vacate the Judgment (Doc. 95), reconsider class certification, and then certify a "successfully sent" defined class as in *American Copper*, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

APB ASSOCIATES, INC., individually and for the class of similarly situated persons,

s/ Phillip A. Bock

Jason Thompson                         Phillip A. Bock
SOMMERS SCHWARTZ, P.C.                  BOCK & HATCH, LLC
2000 Town Center, Suite 900             134 N. La Salle St., Suite 1000
Southfield, MI 48075                    Chicago, IL 60602

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing motion and brief were filed on September 17, 2014, using the Court's CM/ECF system which automatically serves a copy upon all counsel of record.

s/ Phillip A. Bock